# United States District Court

### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BRANDON NORWOOD | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:23-CV-1490-S |
| DALLAS COUNTY HOSPITAL | § | |
| DISTRICT d/b/a PARKLAND HEALTH | § | |
| & HOSPITAL SYSTEM | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dallas County Hospital District d/b/a Parkland Health & Hospital System's Motion for Summary Judgment ("Motion") [ECF No. 19]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 20], Plaintiff Brandon Norwood's Response to the Motion ("Response") [ECF No. 23], Plaintiff's Brief in Support of the Response ("Response Brief") [ECF No. 24], Defendant's Reply to the Response [ECF No. 26], the summary judgment evidence, and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

This is an employment discrimination case with allegations of sex discrimination, race discrimination, and retaliation. Plaintiff is a "black/African[-]American" man. Pl.'s Original Compl. ("Complaint") [ECF No 1] ¶ 3. In October 2021, Defendant offered Plaintiff the position of Senior Medical Staff Coordinator at a Dallas County hospital. Def.'s App.[1] [ECF No. 20-1] 1. Within a few weeks of starting his job, Plaintiff was the subject of several disciplinary reports resulting from incidents that took place between November 11, 2021, and November 29, 2021. *Id.*

---

[1] The appendix attached to Defendant's Brief does not have a title. The Court refers to it as Defendant's Appendix.

at 3-15. The disciplinary reports documented a variety of issues, from not taking notes during meetings when instructed to do so and submitting an "[u]nacceptable draft of minutes," *id.* at 5, to unauthorized tardiness and absences, *id.* at 14-15.

Plaintiff argues that some of these disciplinary reports were unwarranted as he either was never informed that certain behaviors were prohibited or was doing what other employees were doing. Resp. Br. 10-12. For example, one disciplinary report detailed how Plaintiff was warned about clocking in at various times over a two-week period. Def.'s App. 7. Employees, however, were required to clock in at the same time each morning. *Id.* Plaintiff contends that clocking in at different times was a staff-wide issue since his supervisors had told him "that they were going to go talk and have this conversation with everyone in the department." Pl.'s App.[2] [ECF No. 25] 22-23 at 54:16-55:5. Another disciplinary report provided that Plaintiff took his work laptop home without authorization. Def.'s App. 8. Plaintiff stated during his deposition that all employees in his department were taking their laptops home, so he had assumed it was allowed. Pl.'s App. 24 at 56:17-25.

Plaintiff received two final disciplinary reports around the Thanksgiving holiday. Def.'s App. 14-15. On the day before Thanksgiving, Plaintiff showed up to work late, informing his manager of his planned tardiness around two hours after his start time. *Id.* He then left work early that same day without prior authorization. *Id.* at 15. Plaintiff also did not show up to work on the Monday after Thanksgiving, again notifying his manager of his absence two hours after his start time. *Id.* In his deposition, Plaintiff stated that he was late or absent on these days because he was "fostering a set of twins" and that he "was unable to come in because the twins were sick." Pl.'s App. 25 at 58:22-24.

---

[2] The appendix filed in support of Plaintiff's Response Brief does not have a title. The Court refers to it as Plaintiff's Appendix.

While employed with Defendant, Plaintiff appears to have had had a tense relationship with his immediate supervisor, Donna Parrish. *See, e.g.*, Def.'s App. 32-33. On November 19, 2021, Plaintiff asked to meet with his director, Jana LeClair, about Parrish's behavior. *Id.* at 32. LeClair was unavailable, and she suggested that Plaintiff should meet with Parrish. *Id.* at 32-33. Indeed, Parrish asked to speak with Plaintiff later that afternoon. *Id.* at 33. In this conversation, Plaintiff expressed to Parrish that he felt her tone with him was "unprofessional" and that she spoke to him as if he were a "child." *Id.* Plaintiff complained to Parrish that she consistently had an "attitude" with him when he would ask clarifying questions and that the last time Plaintiff asked Parrish a question, she rolled her eyes, waved her hands at him, and told him she did not want to be bothered. Pl.'s App. 10 at 37:14-20. Two days later, LeClair met with Plaintiff to discuss his concerns with Parrish's behavior toward him. Def.'s App. 12. Plaintiff told LeClair that Parrish was "disrespectful" and "not providing clear instruction." *Id.*

Further, Plaintiff testified that on one occasion, Parrish raised her voice at Plaintiff, and Plaintiff responded by also raising his voice at her. Pl.'s App. 18 at 47:8-20 ("So if you're screaming, at that particular instance I had had enough, and I match the same level and intensity of her tone with my tone going back at her."). And during this argument, Parrish told Plaintiff: "Boy, don't talk to me like that." *Id.* at 19 at 48:2-4. Plaintiff responded: "I don't know who the hell you think you're talking to, but I am not your son. I am not a boy. I'm a grown-ass man." *Id.* at 19 at 48:5-7.

Plaintiff also complained of LeClair's behavior. On December 7, 2021, during a meeting that Plaintiff attended, LeClair said to Parrish: "Wow, you really are a slave driver." *Id.* at 27 at 65:1-10. Another employee asked LeClair if she was calling them slaves, to which LeClair responded: "Yes." *Id.* at 27 at 65:13-18. The next day, LeClair apologized in a department meeting.

3

Def.'s App. 19. Regardless, on December 15, 2021, Plaintiff emailed a complaint about the incident to a representative with the compliance department. *Id.*

On December 10, 2021, Plaintiff met with LeClair and Parrish together to discuss workplace behavior expectations. *Id.* at 32-33. At the close of the meeting, LeClair asked Plaintiff what he took away from the meeting, and Plaintiff stated as follows:

> I explained that there have been too many times that both of their responses in tone have been unprofessional. However, [Parrish] has never given directives clearly and speaks to me in a way as if I am a child and not a[n] [] experienced professional. [E]ach time I have asked a question, she always has an attitude . . . .

*Id.* at 33.

On December 13, 2021, LeClair gave Plaintiff a written warning, outlining expectations on start time, tardiness, absences, respect, quality of work product, and deadlines, among other things. *Id.* at 20. This written warning also included a record of numerous dates on which LeClair and/or Parrish already had addressed behavioral and work product expectations with Plaintiff in person. *Id.*

On December 16, 2021, Plaintiff filed a formal complaint with The Office of Talent Management. *Id.* at 32-33. In this complaint, he expressed the issues that he previously complained of to both LeClair and Parrish, including Parrish's "de[mean]ing, condescending and unprofessional" tone. *Id.* He also documented multiple meetings he had with LeClair and/or Parrish regarding Parrish's behavior toward him. *Id.* He noted, however, that despite LeClair's awareness of his issues with Parrish, "there has been no change." *Id.* at 32. Plaintiff concluded the complaint with a general allegation that he was "being bullied and/or picked on and being treated unfairly" and that "this environment has become a hostile work environment due to my managers['] blatant [dis]regard for me." *Id.* at 33.

4

On January 12, 2022, LeClair completed a disciplinary report for Plaintiff's termination. *Id.* at 21. In this termination report, LeClair noted that Plaintiff had "not progressed as expected" and that "his behavior [was] out of compliance." *Id.* She also noted that when she provided training and instructions, Plaintiff was "argumentative" and would "lash[] [out]" and be "accusatory." *Id.*

On January 14, 2022, LeClair sent her team an email commemorating the upcoming Martin Luther King Jr. holiday. *Id.* at 30-31. In this email, she included a picture of Martin Luther King Jr. that had on it the following quote from him: "We may have all come on different ships, but we're in the same boat now." *Id.*

Later that day, Plaintiff emailed Dr. Joseph Chang, an employee of Defendant, stating that he had been terminated that day and had "been retaliated against due to me speaking out regarding the racial slur used last month as well as my dis[d]ain with the email sent this morning." *Id.* at 34.

In August 2022, Plaintiff filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), bringing allegations of racial discrimination and retaliation. *Id.* at 23. In April 2023, Plaintiff received a notice of right to sue from the EEOC, entitling him to institute a lawsuit within ninety days of receipt of the notice. Compl. ¶ 6. Thereafter, Plaintiff filed this lawsuit against Defendant, bringing claims of sex discrimination, race discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Compl. ¶¶ 17-20.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the

5

party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

Title VII prohibits employers from discriminating against "any individual . . . because of such individual's race [or] sex." 42 U.S.C. § 2000e-2(a)(1). The statute also prohibits employers from discriminating against "any of [their] employees . . . because he has opposed any . . . unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* § 2000e-3(a). The Court

will first address Defendant's argument that Plaintiff's sex discrimination claim is barred because

Plaintiff did not exhaust his administrative remedies for that claim. Next, the Court will examine

Defendant's argument that Plaintiff's race discrimination claim fails as a matter of law. Lastly, the

Court will consider Defendant's argument that Plaintiff's retaliation claim fails as a matter of law.

### A. Sex Discrimination Claim

The Court concludes that Plaintiff's sex discrimination claim cannot survive summary

judgment because Plaintiff has not administratively exhausted that claim. Before seeking relief in

federal court, a plaintiff bringing a claim under Title VII must exhaust his administrative remedies.

*Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). To exhaust his remedies, "a

plaintiff must file a timely charge with the EEOC and then receive a notice of the right to sue."

*Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (citing *Taylor*, 296 F.3d at 379).

And "a claim generally must arise out of the plaintiff's EEOC charge" to satisfy the exhaustion

requirement. *Id.* (citation omitted). This requirement is meant "to give the employer notice of the

existence and general substance of the discrimination allegations." *Id.* (citation omitted).

Plaintiff did not exhaust his administrative remedies for his sex discrimination claim. In

his Charge, when asked "Why you think you were discriminated against?", Plaintiff checked only

the boxes for "Race," "Retaliation," and "Other," writing in "Hostile Work Env[ironment]." Def.'s

App. 23. He did not check the box for "Sex." *Id.* And when asked "What happened to you that you

think was discriminatory?" in the Charge, Plaintiff only references use of racial slurs, racist videos

in emails, and retaliation for filing a "race complaint." *Id.* He did not include in the Charge any

allegations of sex discrimination or any facts that would put Defendant on "notice of the existence

and general substance of the [sex] discrimination allegations." *Ernst*, 1 F.4th at 337 (citation omitted).[3]

Moreover, Plaintiff did not substantively address Defendant's argument that he failed to exhaust his administrative remedies. Def.'s Br. 6. Instead, Plaintiff only argues, in the context of his race discrimination claim: "To the extent the Court is persuaded by Defendant's argument stating Plaintiff cannot sustain a sex discrimination complaint, it is of no consequence." Resp. Br. 9. "Judges in this district and elsewhere have consistently deemed arguments as conceded where those arguments remain unaddressed in the parties' responsive briefing." *Cobble v. 20/20 Commc'ns, Inc.*, No. 4:18-CV-00150-Y, 2019 WL 13175520, at *4 (N.D. Tex. Feb. 21, 2019) (citation omitted). The Court finds that this single brief mention of Defendant's affirmative defense is not a substantive response. Accordingly, the Court holds that Plaintiff conceded his sex discrimination claim. For this reason, and because Plaintiff did not exhaust his administrative remedies, Plaintiff's sex discrimination claim fails.

### B. Race Discrimination Claim

The Court also concludes that Plaintiff's race discrimination claim cannot survive summary judgment because Plaintiff cannot establish all necessary elements of such a discrimination claim. Plaintiff has brought a claim for race discrimination based on the theories of disparate treatment and hostile work environment. Compl. ¶¶ 18-19. The Court addresses each discrimination theory in turn.

---

[3] Plaintiff seemed to include in the Charge at least one attachment, *see* Def.'s App. 23 ("See Attached!"), but Plaintiff bears the burden to put forth evidence and did not submit to the Court any attachment to the Charge, *see Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) (citing *Celotex*, 477 U.S. at 322-23).

*i. Disparate Treatment*

Plaintiff's disparate treatment claim cannot survive summary judgment because he has not provided evidence of similarly situated employees who were treated more favorably. Where, as here, a plaintiff provides no direct evidence of discrimination, the plaintiff must "rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis" to establish a prima facie case of disparate treatment. *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019). Under this framework, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated employees who were outside his protected class were treated more favorably. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the plaintiff establishes a prima facie case, "the burden shifts to the employer to show it had a legitimate, nondiscriminatory reason for [the adverse employment action]." *Id.* (citation omitted). If the employer meets this burden, "the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either that the proffered reason was a pretext for discrimination, or that the plaintiff's protected status was another motivating factor for the decision." *Id.* (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

Here, Plaintiff does not establish the fourth element of a prima facie claim of discrimination as he does not present any evidence of similarly situated employees outside his protected class. Employees are similarly situated if they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citations omitted).

Plaintiff argues that five separate employees are similarly situated employees outside his protected class. The Court disagrees. First, Plaintiff asserts that Laura Moore,[4] Lachester Duncan, Carolyn Hall, and Pershia Todd[5] are similarly situated and outside his protected class, noting that they had "similar positions and [were] under the same supervision" and "were not black men[.]" Resp. Br. 9. Because Plaintiff's sex discrimination claim does not survive summary judgment, the relevant protected class here is race, not sex or a combination of the two. Thus, in determining whether these allegedly similarly situated employees were outside Plaintiff's protected class, the relevant question is whether these four employees were not Black. Plaintiff, however, does not provide any evidence of each individual's race. *See id.*; Pl.'s App. 5 at 24:3-25. These four individuals, therefore, cannot be used as comparators to support his disparate treatment claim. *See Young v. 7-Eleven, Inc.*, 170 F. App'x 302, 304 (5th Cir. 2006) (affirming district court's grant of summary judgment on disparate treatment claim since the plaintiff "offered no evidence of the race of the person who replaced him" and thus could not establish a prima facie case).

Moreover, Plaintiff provides no evidence showing that these four individuals have "comparable violation histories"; in fact, he does not even allege that this is the case. *Lee*, 574 F.3d at 260 (citations omitted). For example, he does not show that they committed the same tardiness, absence, or behavioral infractions that he committed. And while he generally stated that other employees committed the same infractions as he did, *see, e.g.*, Pl.'s App. 24 at 56:17-25, he does not demonstrate that any of these four individuals committed those specific infractions, *see Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203, 210 (5th Cir. 2020) (finding that

---

[4] In his Response Brief, Plaintiff refers to this individual as Laura Duncan. Resp. Br. 9. However, because the evidence before the Court shows that her name was Laura Moore, the Court uses that name herein.

[5] In his Response Brief, Plaintiff refers to this individual as Persia Todd. Resp. Br. 9. However, because the evidence before the Court shows that her name is spelled Pershia Todd, the Court uses that spelling herein.

employees were not similarly situated for purposes of a discrimination claim since the violations committed by those employees were too "dissimilar" to those committed by the plaintiff). For these reasons, Moore, Duncan, Hall, and Todd are not similarly situated employees outside Plaintiff's protected class and thus cannot support a prima facie case of discrimination.

Second, Plaintiff identifies Shelley Bryan, a "white woman," as a "similarly situated" employee since she "had similar duties as Plaintiff and worked on the same team as him." Resp. Br. 9. But Plaintiff provides no evidence to the Court about this individual, including her role, responsibilities, her supervisor, or whether she committed similar infractions as those committed by Plaintiff.[6] *See Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 652 (5th Cir. 2025) ("When a plaintiff gives only a conclusory explanation about why an individual is an appropriate comparator, the plaintiff's discrimination claim fails." (citation omitted)). Accordingly, Bryan also cannot serve as a similarly situated employee for purposes of Plaintiff's prima facie case. Thus, Plaintiff's disparate treatment claim fails.

### ii. Hostile Work Environment

The Court also concludes that Plaintiff's hostile work environment claim cannot survive summary judgment because he does not provide evidence of objectively offensive conduct. To prevail on this claim, Plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) Defendant knew or should have known of the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citation omitted).

---

[6] In support of his assertion that Bryan had similar duties and worked on the same team as Plaintiff, he cites to an "Audio Recording 1" in Plaintiff's Appendix. Resp. Br. 9 (citing Pl.'s App. 35). The Court, however, is not in receipt of any audio recording from Plaintiff.

Plaintiff does not establish the fourth element, harassment affecting a term, condition, or privilege of employment. "For harassment to alter the conditions of a person's employment, 'the conduct complained of must be both objectively and subjectively offensive.'" *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1066 (5th Cir. 2023) (quoting *WC&M Enters.*, 496 F.3d at 399). Relevant considerations in determining whether harassment is objectively offensive include the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct interferes with the employee's work performance. *Id.* at 1066-67 (citation omitted). "No single factor is determinative." *WC&M Enters.*, 496 F.3d at 399 (citation omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not objectively offensive conduct that would alter the conditions of a victim's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (cleaned up); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347-48 (5th Cir. 2007). The legal standard for workplace conduct to constitute actionable harassment is high. *Molden v. E. Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310, 316 (5th Cir. 2017) (citation omitted); *see also Dike v. Columbia Hosp. Corp. of Bay Area*, No. 24-40058, 2025 WL 315126, at *5 (5th Cir. Jan. 28, 2025) ("Not all harassment is actionable; rather, only that which is objectively *and* subjectively offensive and so severe *or* pervasive as to alter the terms and conditions of employment may give rise to a claim." (citation omitted)).

Plaintiff provides no evidence of conduct that is objectively offensive enough to affect a condition of his employment. As evidence of a hostile work environment, Plaintiff points to: (1) LeClair calling Parrish a "slave driver" in a meeting that Plaintiff attended and confirming that she was referring to the employees as "slaves"; (2) Parrish calling him "boy" during a heated argument; (3) being "subjected to repeated yelling, disrespectful language[,] and

12

unprofessionalism"; and (4) Parrish's alleged history of using racial slurs such as "monkey" and the n-word against Black people while in another role.[7] Resp. Br. 4-9, 16.

The Court first declines to consider whether Parrish's history of racial slurs in another role can support Plaintiff's hostile work environment claim. Plaintiff cites *Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002) to assert that the Court must consider this alleged history in determining whether a hostile work environment existed, but this case does not support his argument. Resp. Br. 7. In *Ramsey*, the Fifth Circuit held that it was error for the district court to not consider time barred incidents since such incidents "were relevant background to determine the severity of the harassing conduct." 286 F.3d at 268. In other words, "[d]iscriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts." *Id.* (citation omitted). But in *Ramsey*, the relevant background information that was time barred under Title VII was the alleged harasser's conduct toward the plaintiff at the plaintiff's job. *Id.* at 269. The Fifth Circuit, however, did not consider evidence of the alleged harasser's conduct toward other individuals in the harasser's previous role. And Plaintiff does not cite any binding precedent that provides that the Court can consider such evidence.

Moreover, even if the Court were to consider this alleged history, Plaintiff's hostile work environment claim still fails. The Court takes seriously the allegations of the use of the term "monkey" and the n-word against Black individuals. *See Henry v. CorpCar Servs. Hous., Ltd.*, 625 F. App'x 607, 612 (5th Cir. 2015) (finding that frequent comparisons of Black employees to gorillas was objectively offensive since "African-Americans have historically been subjected to such comparisons" (citation omitted)); *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022)

---

[7] Plaintiff does not respond to Defendant's argument that LeClair's email commemorating Martin Luther King Jr. Day does not support a hostile work environment claim. *See* Def.'s Br. 9. Accordingly, the Court finds that Plaintiff has conceded this argument. *See Cobble*, 2019 WL 13175520, at *4 (citation omitted).

("The N-word has been . . . described as a term that sums up all the bitter years of insult and struggle in America, a pure anathema to African-Americans, and probably the most offensive word in English." (cleaned up)). But the record contains no evidence that this conduct was directed at, or witnessed by, Plaintiff, and thus cannot support his claim. *See Septimus v. Univ. of Hous.*, 399 F.3d 601, 612 (5th Cir. 2022) (observing that the alleged harassment a plaintiff did not personally experience was inadequate to render her alleged harassment objectively offensive).

Next addressing the remaining conduct, the Court concludes that this conduct is not sufficiently frequent, severe, physically threatening, or humiliating to support a hostile work environment claim. *See Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 107 (5th Cir. 2009) (affirming grant of summary judgment on hostile work environment claim where a coworker called the plaintiff "boy" on two occasions and said he would "beat the tar off of him"); *Clark v. City of Alexandria*, 116 F.4th 472, 481 (5th Cir. 2024) (affirming grant of summary judgment on hostile work environment claim and noting that although coworkers' use of the phrases "monkey boy" and "colored coalition" was "highly demeaning," these phrases, one "made about [the plaintiff], and the other made to and about someone else, fall more in the bucket of 'offensive utterances'" (citations omitted)); *Powers v. Dall. Cnty. Cmty. Coll. Dist.*, No. CA3:96-1087-BC, 1997 WL 446442, at *3-4 (N.D. Tex. July 16, 1997) (granting motion for summary judgment on hostile work environment claim where the plaintiff identified only six instances of employees making "racial jokes or comments").

The terms "slave driver," "slave," and "boy," and repeated instances of yelling at Plaintiff, are "humiliating, highly offensive, and . . . undoubtedly warrant[ing] discipline." *Clark*, 116 F.4th at 481 (alterations in original); *see also Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 402 (5th Cir. 2021) (observing the "long and sordid history of people using diminutives like 'boy' to refer to

adult black men in a racially invidious manner" (citation omitted)). But these incidents do not meet the high threshold for actionable harassment in the Fifth Circuit. *See Molden*, 715 F. App'x at 316 (citation omitted); *see also WC&M Enters.*, 496 F.3d at 400-01 (reversing district court's grant of summary judgment where evidence showed "harassment on a regular basis for a period of approximately one year" including co-workers calling the plaintiff "Taliban," "Arab," and "Muslim extremist," "mock[ing] his diet and prayer rituals," suggesting the plaintiff was involved in the September 11 attacks, telling the plaintiff he should "just go back where [he] came from," and repeatedly banging on the plaintiff's office glass partition to startle him (second alteration in original)).

Moreover, Plaintiff has not presented any evidence that any of this conduct interfered with his work performance. *See Latif v. Locke*, No. A-07-CV-644-LY, 2009 WL 3261562, at *8 (W.D. Tex. Oct. 8, 2009) (granting summary judgment against the plaintiff because, among other reasons, he offered no evidence that the alleged harassment "interfered with the performance of his duties").

Accordingly, these incidents do not constitute objectively offensive conduct that affected the terms, conditions, or privileges of Plaintiff's employment. Thus, Plaintiff's hostile work environment claim fails.

### C. Retaliation Claim

The Court also concludes that Plaintiff's retaliation claim cannot survive summary judgment because he cannot establish that Defendant's legitimate, nonretaliatory reasons for his termination are pretextual. To evaluate retaliation claims, courts use the *McDonnell Douglas* burden-shifting framework. *See Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citation omitted). Under this framework, Plaintiff must first establish a prima facie case of retaliation by

showing that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Cooper v. Dall. Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008) (citation omitted). If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to provide a "legitimate, nonretaliatory reason for the adverse employment action." *Id.* (citation omitted). And if Defendant provides a legitimate, nonretaliatory reason, the burden shifts back to Plaintiff to show that Defendant's reason is a pretext for retaliation, "which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

### i. Prima Facie Case

The Court addresses each element of a prima facie case and concludes that Plaintiff has established a prima facie case of retaliation.

### a. Protected Activity

Regarding the first element of a prima facie case, Plaintiff points to multiple alleged protected activities for which he argues he was retaliated against: (1) Plaintiff's complaints made in his December 10, 2021, meeting with LeClair and Parrish about their behavior toward him; (2) Plaintiff's email to the compliance department on December 15, 2021, regarding LeClair's "slave driver" comment; (3) Plaintiff's formal complaint to The Office of Talent Management on December 16, 2021; and (4) Plaintiff's email to Dr. Chang on January 14, 2022, regarding Plaintiff's termination. *See* Resp. Br. 14-17. Plaintiff also generally argues that in each meeting he had with LeClair, he would complain about the use of the terms "slave driver," "slave," and "boy."

16

*See id.* at 16 (citing Pl.'s App. 8 at 27:6-13, 9 at 33:13-20, 13 at 40:1-25, 14 at 41:1, 22-25, 15 at 42:1-25). The Court addresses each alleged protected activity in turn.

Plaintiff's complaint to LeClair and Parrish in the December 10 meeting is not a protected activity. "An employee that files an internal complaint of discrimination engages in a protected activity." *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (citation omitted). While "[a]n informal oral complaint may constitute protected activity," *Beckvar v. Home Depot U.S.A, Inc.*, No. Civ. A. H-03-3061, 2005 WL 1155697, at *5 (S.D. Tex. Apr. 18, 2005) (citation omitted), a vague complaint about bullying without any reference to illegal discrimination is not protected activity, *see Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (citation omitted). Plaintiff does not provide evidence that he complained about illegal discrimination in this meeting with LeClair and Parrish. Instead, the record reflects that he solely complained about their unprofessional tone and lack of clear direction. *See* Def.'s App. 33; Pl.'s App. 11 at 38:25-39:25. With no references to illegal employment activity, this informal oral complaint does not amount to protected activity and, therefore, cannot support a prima facie case of retaliation.

Plaintiff's email to Defendant's compliance department is protected activity. In this email, Plaintiff complained about LeClair's use of the word "slave driver" during a staff meeting. Def.'s App. 19. By referencing this racially charged term, Plaintiff could have had a "reasonable belief" that this conduct was unlawful, even though this incident is insufficient to support his hostile work environment claim. *See Long*, 88 F.3d at 304 ("§ 2000e-3(a) requires the employee to demonstrate that she had at least a 'reasonable belief' that the practices she opposed were unlawful." (citation omitted)); *see also Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-CV-1790-D-BH, 2014 WL 1714487, at *17 (N.D. Tex. Apr. 30, 2014) (holding that informal complaints to a supervisor

constituted protected activity where the plaintiff complained of a coworker's comment that he was going to "whip employees if they did not get to work" because the comment could be seen by a jury as racially charged since it was made to Black employees).

Plaintiff's formal complaint to The Office of Talent Management is not protected activity. This complaint includes no allegations of illegal discrimination or other unlawful employment activity. *See Davis*, 448 F. App'x at 493. Instead, Plaintiff only references a general feeling of "being bullied and/or picked on and being treated unfairly." Def.'s App. 32-33. Plaintiff argues that it is inconsequential that this formal complaint does not mention discrimination since there was a strong inference that he was complaining of racial discrimination. Resp. Br. 15. The Court disagrees. In this complaint, Plaintiff addresses Parrish's "de[mean]ing, condescending[,] and unprofessional" behavior and her attitude toward Plaintiff, as well as a hostile work environment, but nowhere does Plaintiff mention any conduct that would give rise to an inference of racial discrimination. Def.'s App. 32-33; *see Davis*, 448 F. App'x at 493 (holding that a vague complaint of a "hostile work environment" could not support a retaliation claim where it had no allegations of unlawful activity and "lacked a racial . . . basis" (citation omitted)). Nor does he provide any evidence that the surrounding circumstances of this complaint would have allowed The Office of Talent Management to infer that he was referencing racial discrimination. As such, this complaint is not protected activity and cannot support a prima facie case of retaliation.

Plaintiff's email to Dr. Chang is protected activity. In this email, Plaintiff complains about the "racial slur used last month." Def.'s App. 34. By referencing the use of a racially charged term, Plaintiff could have a "reasonable belief" that this conduct was unlawful, even though this incident

18

is insufficient to support his hostile work environment claim. *See Long*, 88 F.3d at 304 (citation omitted).

Finally, Plaintiff stated in his deposition that on multiple dates when meeting with LeClair, he would complain about the use of the terms "slave driver," "slave," or "boy." *See* Pl.'s App. 8 at 27:6-13, 9 at 33:13-20. Again, by referencing these racially charged terms, Plaintiff could have a "reasonable belief" that this conduct was unlawful, even though these incidents are insufficient to support his hostile work environment claim. *See Long*, 88 F.3d at 304 (citation omitted). These complaints, therefore, are protected activity.

### b. Adverse Employment Action

Regarding the second element of a prima facie case, Plaintiff argues that he suffered adverse employment actions when he (1) received a "formal write-up" on December 13, 2021, from LeClair and (2) was terminated on January 14, 2022. *See* Resp. Br. 15-16. A "termination is clearly an adverse employment action." *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F App'x 437, 442 (5th Cir. 2007) (citation omitted). The Court, however, concludes that the formal write-up was not an adverse employment action for purposes of a prima facie case of retaliation. Under Fifth Circuit law, for an action to be an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *DeHart*, 214 F. App'x at 441 (quoting *Burlington*, 548 U.S. at 68). In *DeHart*, the Fifth Circuit held that a written warning was not an adverse employment action for two reasons. First, "there were colorable grounds for the warning and a reasonable employee would have understood a warning under these circumstances was not necessarily indicative of a retaliatory mind-set." *Id.* at 442. Second, the "written warning did not

19

in fact dissuade" the plaintiff from making a charge of discrimination with the EEOC. *Id.* Similarly here, Plaintiff would not have been dissuaded from making a complaint after this written warning, as there were colorable grounds for the warning. Further, Plaintiff in fact made complaints with the compliance department and The Office of Talent Management a few days after receipt of the warning. Accordingly, the Court finds that the only adverse employment action is Plaintiff's termination.

### c. Causal Link

Regarding the third element of a prima facie case, the Court concludes that Plaintiff has only established a causal link between his complaints to LeClair and his termination. The Court addresses each protected activity in turn.

Plaintiff's email to the compliance department on December 15, 2021, is not causally linked to his termination. To establish a causal link between protected activity and an adverse employment action, "the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) (citation omitted). In other words, courts "look to who actually made the decision or caused the decision to be made" and determine whether that decisionmaker had knowledge of the protected activity. *Yancy v. U.S. Airways, Inc.*, 469 F. App'x 339, 344 (5th Cir. 2012) (citation omitted). Plaintiff emailed his complaint to Stefani Saxton and Candice Mccoy in the compliance department, Def.'s App. 19, but he has not demonstrated that LeClair—the supervisor who decided to terminate him—knew about this complaint or that Saxton or Mccoy had input in LeClair's termination decision, *see Yancy*, 469 F. App'x at 344-45 (affirming grant of summary judgment on retaliation claim where the plaintiff presented no evidence that the employees she made a complaint to "were responsible for the decision to suspend her, or that either exerted any leverage

over" the decisionmaker who terminated the plaintiff). Accordingly, Plaintiff cannot establish a causal link between this complaint and his termination, and thus, this complaint cannot support a prima facie case of retaliation.

Plaintiff's email to Dr. Chang on January 14, 2022, is also not causally linked to his termination. In this email, Plaintiff stated that he had been terminated earlier that day. Def.'s App. 34. Since this complaint was made *after* his termination, no causal link can exist between the complaint and his termination. *See Fuentes v. City of San Antonio Fire Dep't*, 240 F. Supp. 3d 634, 645 (W.D. Tex. 2017) (finding "no causal link between the protected activity and the adverse employment action because the adverse action occurred *before* the protected activity"). Thus, this email cannot support a prima facie case of retaliation.

On the other hand, Plaintiff has demonstrated a causal link between his complaints to LeClair and his termination. A plaintiff may demonstrate a causal link by "pointing to close enough timing between the protected activity and the adverse action." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019). Demonstrating but-for causation is not necessary at the prima facie stage of a retaliation claim. *See id.* at 241-42 (citing *Feist*, 730 F.3d at 454). In his deposition, Plaintiff stated that he made these informal complaints in all his meetings with LeClair, which occurred within one to two months of his termination. *See* Pl.'s App. 8 at 27:6-13, 9 at 33:13-20; *see also* Def.'s App. 20-21. One to two months between the protected activity and termination is close enough to establish a causal link. *See Feist*, 730 F.3d at 454 (noting that "'a time lapse of up to four months' may be sufficiently close [to infer retaliation]" (citation omitted)). Moreover, Plaintiff made these comments directly to LeClair, the decisionmaker who ultimately terminated

him. *See Yancy*, 469 F. App'x at 344 (citation omitted). Plaintiff, therefore, has established the third element of his prima facie case.

### ii. Legitimate, Nonretaliatory Reason

With a prima facie case established, the burden shifts to Defendant to establish a legitimate, nonretaliatory reason for Plaintiff's termination. To meet its burden, Defendant provided Plaintiff's disciplinary reports, which address, among other things, his failure to meet behavioral expectations and workplace protocol, failure to meet work product quality standards, and tardiness and/or absences. *See* Def.'s App. 3-15, 20-21. With this documented disciplinary history, Defendant has established multiple legitimate, nonretaliatory reasons for terminating Plaintiff. *See Mendez v. Dollar Tree Stores, Inc.*, 114 F. App'x 149, 150 (5th Cir. 2004) (finding that "poor work performance and continuing violations of company policy" are legitimate, nondiscriminatory reasons for termination).

### iii. Pretext

Because Defendant established legitimate, nonretaliatory reasons for Plaintiff's termination, the burden shifts back to Plaintiff to establish that Defendant's proffered reasons are merely pretexts for retaliation. At the pretext stage of establishing a retaliation claim, but-for causation is required. *Feist*, 730 F.3d at 454 (citation omitted). And "temporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (citation omitted). Instead, a plaintiff can establish pretext through "evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013) (citation omitted). Moreover, "the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)

22

(citation omitted), *abrogated on other grounds by Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023).

To argue that Defendant's proffered reasons are pretextual, Plaintiff points to the fact that other employees also committed the same infractions as him, *see* Resp. Br. 10-14, and that he was terminated soon after his complaints, *see id.* at 2, 18. Plaintiff's arguments and the evidence, however, do not demonstrate but-for causation and thus do not establish pretext.

The Court first addresses Plaintiff's contention that other employees committed similar infractions as he did. If a plaintiff points to the treatment of other employees to establish pretext, the plaintiff "must show that the plaintiff's termination was taken 'under nearly identical circumstances' as those faced by the comparator." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 580 (5th Cir. 2020) (quoting *Garcia*, 938 F.3d at 244). "Employees are similarly situated when they 'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Garcia*, 938 F.3d at 244 (quoting *Lee*, 574 F.3d at 260).

Plaintiff alleges that a certain set of the infractions he committed were also committed by other employees. *See* Resp. Br. 10-12. As an initial matter, Plaintiff must rebut each legitimate reason for his termination, but he does not do so. *See McCoy*, 492 F.3d at 557. Instead, he only alleges that some of his infractions were also committed by others without substantively addressing his other infractions. *See* Resp. Br. 10-14. For example, he does not allege that other employees were also similarly tardy or absent or similarly failed to meet work product quality standards. As to the infractions that he alleges were committed by other employees, Plaintiff does not provide any specific details on these other employees. He does not provide the names, roles, or responsibilities of these employees or their specific infraction histories. *See Garcia*, 938 F.3d

at 244 (citation omitted). Accordingly, reliance on these employees cannot help Plaintiff establish pretext. *See Rodriguez v. City of Corpus Christi*, No. 2:21-CV-00297, 2023 WL 6149914, at *22-23 (S.D. Tex. Aug. 7, 2023) (granting summary judgment on retaliation claim where the plaintiff provided no evidence that a proffered comparator had the same workplace infractions as him).

With only evidence of close temporal proximity between these informal complaints and his termination, Plaintiff cannot demonstrate but-for causation. *See Strong*, 482 F.3d at 807-08 ("[T]emporal proximity alone is insufficient to prove but for causation." (citation omitted)). Plaintiff, therefore, cannot establish that the legitimate, nonretaliatory reasons proffered by Defendant are a pretext for retaliation, and thus Plaintiff's retaliation claim fails.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [ECF No. 19]. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

SIGNED February 25, 2025.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**